FILED & ENTERED

SEP 18 2026

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Cetulio DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

In re:

HAWKEYE ENTERTAINMENT, LLC,

Debtor and Debtor in Possession.

---

HAWKEYE ENTERTAINMENT, LLC,

Plaintiff,

v.

SMART CAPITAL INVESTMENTS I, LLC; SMART CAPITAL INVESTMENTS II, LLC; SMART CAPITAL INVESTMENTS III, LLC; SMART CAPITAL INVESTMENTS IV, LLC; SMART CAPITAL INVESTMENTS V, LLC; and MICHAEL S. CHANG,

Defendants.

---

SMART CAPITAL INVESTMENTS I, LLC, et al.,

Counterclaimants,

v.

HAWKEYE ENTERTAINMENT, LLC, a California limited liability company; W.E.R.M. INVESTMENTS, LLC, a California Limited Liability Company; and ROES 1-20

Counterclaim Defendants.

Case No. 1:23-bk-11501-MB

Chapter 11

Adv. No. 1:24-ap-01031-MB

**CONSOLIDATED FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING TRIAL**

**<u>Trial Held:</u>**

Dates: June 8–11, 2026
Place: Courtroom 303
21041 Burbank Boulevard
Woodland Hills, CA 91367

## I. INTRODUCTION

On June 8–11, 2026, the Court held a consolidated evidentiary hearing on motions filed in Case No. 1:23-bk-11501-MB (the "Bankruptcy Case") and a trial on the complaint and counterclaim filed in Adv. No. 1:24-ap-01031-MB (the "Adversary Proceeding") (collectively, the "Proceedings"), the Honorable Martin R. Barash, United States Bankruptcy Judge, presiding. Present on behalf of the Debtor and Debtor in Possession/Plaintiff/Counter-Defendant Hawkeye Entertainment, LLC ("Debtor" or "Hawkeye") and Counterclaim-Defendant W.E.R.M. Investments, LLC ("WERM") were Sandford Frey, Esq. of Stinson LLP; Jordan Shaw, Esq.; Zachary Ludens, Esq., and Lauren Palen, Esq. of Shaw Lewenz; and Adi McAbian ("Mr. McAbian"). No counsel appeared for Defendants/Counterclaimants Smart Capital Investments I, LLC; Smart Capital Investments II, LLC; Smart Capital Investments III, LLC; Smart Capital Investments IV, LLC; Smart Capital Investments V, LLC (collectively, "Smart Capital"). Defendant Michael S. Chang ("Mr. Chang") appeared on his own behalf, pro se, made argument, and presented evidence. A translator was present for the entirety of trial for Mr. Chang.[1]

The issues at trial were as follows:

### A. The Bankruptcy Case

a. *Motion of Hawkeye Entertainment, LLC, Debtor and Debtor-in-Possession for an Order (1) Authorizing the Assumption of Non-Residential Real Property Lease and Sublease, and (2) Determining the Debtor and Sublessor Not to Be in Breach or Default, Thereby Deeming Them in Compliance with 11 U.S.C. § 365(b)(1)(A) and Excusing the Debtor from any Additional Compliance with 11 U.S.C. § 365(b)(1)(B) and (C); or Alternatively, Extending the Time Period Within Which the Debtor May Assume or Reject Unexpired Non-Residential Leases and Executory Contracts* (Case Dkt. 52) ("2023 Assumption Motion");[2] and,

b. *Motion of Hawkeye Entertainment, LLC, Debtor and Debtor-in-Possession for an (1) Order Deeming Debtor in Compliance with 11 U.S.C. § 365(d)(3) and (2) Authorizing the*

---

[1] The Court notes that Debtor and WERM provided the translator for Mr. Chang. (*See* Trial Tr. June 8, 2026, at 8:15–16, 11:14–15).

[2] References to "Case Dkt." refer to the docket in the Bankruptcy Case. References to "Adv. Dkt." refer to the docket in the Adversary Proceeding.

*Debtor to Pay All Monetary Obligations Pursuant to the Lease into the Rental Trust Account* (Case Dkt. 57) (the "Compliance Motion," and together with the 2023 Assumption Motion, the "Lease Motions").

**B. <u>The Adversary Proceeding</u>**

a. *Debtor and Debtor in Possession's Complaint for Declaratory and Injunctive Relief Regarding Violations of the Automatic Stay of 11 U.S.C. § 362(a)(3)* filed on June 25, 2024 (Adv. Dkt. 1) ("Complaint") by the Debtor against Smart Capital and Mr. Chang; and,

b. *Counter-Claimants Smart Capital Investments I, LLC, Smart Capital Investments II, LLC, Smart Capital Investments III, LLC, Smart Capital Investments IV, LLC, Smart Capital Investments V, LLC's Counterclaim for: 1. Breach of Contract; 2. Breach of the Implied Covenant of Good Faith and Fair Dealing; 3. Declaratory and Injunctive Relief; 4. Violation of 11 U.S.C. § 365(d)(3); 5. Private Nuisance; 6. Waste; 7. Negligence; 8. Ejectment* ("Counterclaims") (Adv. Dkt. 34) against the Debtor and WERM.

The Court, having considered the evidence, the testimony of the witnesses, the credibility of the witnesses, the argument of counsel, the record, and being otherwise fully advised in the premises, based on the substantial competent information, hereby makes the following **FINDINGS OF FACT** and **CONCLUSIONS OF LAW**:[3]

## II. <u>PREFACE</u>

As a threshold matter, the Court notes that all Parties who appeared at trial were afforded a full and fair opportunity to present their respective positions. The Court heard three days of testimony and one day of argument. Each Party had the opportunity to testify, present documentary evidence, examine and cross-examine witnesses, make evidentiary objections, and present legal argument to the Court. Moreover, while Smart Capital strategically elected not to formally appear, Mr. Chang—who represented himself as being the primary, if not sole, authorized representative of Smart Capital—

---

[3] Any Conclusion of Law that is properly or additionally deemed a Finding of Fact shall be, and is hereby, so designated and incorporated as a Finding of Fact. Conversely, any Finding of Fact that is properly or additionally deemed a Conclusion of Law shall be, and is hereby, so designated and incorporated as a Conclusion of Law.

appeared and through testimony, evidence, and argument, made the very same arguments for and against Smart Capital's position as outlined in Smart Capital's Counterclaim and Opposition to the Debtor's lease assumption. The Court carefully considered all admitted evidence, witness testimony, and arguments presented by the Parties in reaching its findings and conclusions herein.

To the extent any Party failed to appear with or through counsel, present additional evidence, call additional witnesses, or otherwise further develop the record, such failure was the result of that Party's own litigation decisions and not any limitation imposed by the Court. As the Court noted on the record, the Court found Smart Capital's failure to pay its former counsel to be a calculated decision on Smart Capital's part to try to delay the trial—Mr. Chang testified that he had been receiving rent checks from the Debtor and simply refused to negotiate the rent checks, despite the fact that the rent would have allowed Smart Capital to bring its counsel's legal bills current. There was also evidence in the record that Smart Capital employed licensed in-house counsel that routinely appeared during the bankruptcy proceedings and related matters; and that Smart Capital had employed and recently employed several law firms in separate nonbankruptcy actions proceeding simultaneously. The Court is satisfied that all Parties received due process and were afforded a meaningful opportunity to be heard on all issues presented for determination.

A memorandum regarding the exhibits admitted into evidence at trial, to which true copies of such exhibits are appended, appears at Case Docket No. 608. References herein to exhibits admitted at trial shall appear in the following format: "(Trial Exh. __)." References herein to testimony from the trial transcripts appear in the following format: "(Trial Tr. [date], at __)." The Court has considered all admitted exhibits, witness testimony, stipulations, argument, and matters of which it has taken judicial notice in making the findings of fact and conclusions of law set forth herein.

## III. <u>JURISDICTION AND AUTHORITY</u>

The Court has jurisdiction over the matters addressed herein pursuant to 28 U.S.C. § 1334(b). The Lease Motions seeking relief under section 365 of the Bankruptcy Code arise under title 11 and constitute core proceedings pursuant to 28 U.S.C. § 157(b). Accordingly, the Court has both statutory and constitutional authority to enter final orders and judgments with respect to those matters.

The Court further has jurisdiction over the claims and counterclaims asserted in the Adversary Proceeding pursuant to 28 U.S.C. § 1334(b). The Complaint seeks declaratory and injunctive relief concerning the Lease, Sublease, and related rights that are central to the Debtor's reorganization efforts and that form the subject matter of the Lease Motions under section 365. (Adv. Dkt. 1.) The Counterclaims likewise concern the same Lease, Sublease, and alleged defaults thereunder. (Adv. Dkt. 34.) Moreover, Smart Capital and Mr. Chang specifically and expressly consented to this Court's determination of the Adversary Proceedings. (Adv. Dkt. 34 ¶ 13) ("The Bankruptcy Court has constitutional jurisdiction to enter a final judgment in this adversary proceeding. To the extent the Court does not have constitutional jurisdiction to enter final judgment, Smart Capital consents to the Court entering a final judgment in this proceeding."); (Adv. Dkt. 35 ¶ 3) ("Defendants admit the allegations in paragraph 3 of the complaint and that the Court may enter a final judgment on the Complaint. Pursuant to FRBP 7012(b) Defendants also consent to the entry of a final judgment by the Court.").

To the extent that any claim or counterclaim does not constitute a core proceeding, the Court finds that it is at minimum related to the Debtor's bankruptcy case because the outcome of such claims could conceivably affect the administration of the estate, the Debtor's rights under the Lease and Sublease, and the Debtor's reorganization efforts. Additionally, Smart Capital and Mr. Chang filed proofs of claim in the case that assert claims in connection with the Lease and Sublease and alleged defaults thereunder. The Court further finds that any objection to this Court's entry of final orders or judgments with respect to such claims has been waived. Accordingly, the Court concludes that the Court possesses the adjudicative authority to enter final orders and judgments as to all claims, counterclaims, motions, and requests for relief addressed in these Findings of Fact and Conclusions of Law.

These Findings of Fact and Conclusions of Law are entered pursuant to Federal Rule of Bankruptcy Procedure 7052, which applies to this adversary proceeding and, through Federal Rule of Bankruptcy Procedure 9014, to the contested matters adjudicated in connection with the Lease Motions which seek relief under section 365 of the Bankruptcy Code.

# IV. FINDINGS OF FACT

## A. Introduction

The trial before the Court was part of a more than fifteen-year saga. A saga that, as the Court noted on the record, stems from Mr. Chang and his entities'—now Smart Capital, formerly New Vision Horizon—persistent scheme to oust his tenant—the Debtor—and the Debtor's subtenant, WERM. The case has been the subject of previously published decisions from this Court, the District Court, and the Ninth Circuit Court of Appeals, and ultimately resulted in a nearly million-dollar attorneys' fee award against Mr. Chang's entities.

But that did not dissuade Mr. Chang or Smart Capital.

As detailed below, Mr. Chang and Smart Capital have continued their efforts, however meritless, to find, fabricate, cause, or create defaults under the Lease or impediments to the Debtor's and WERM's operations. Mr. Chang and Smart Capital's counterclaims and arguments include allegations that the Debtor performed unauthorized work, in the face of Smart Capital's instruction to complete that very work; that the Debtor performed unpermitted work, despite zero credible evidence in support of such contentions; that the Debtor completed structural work to the Premises, despite overwhelming evidence to the contrary; that the Debtor's representative, Mr. McAbian, fraudulently signed a master covenant in 2013, despite this claim being adjudicated and/or released by prior orders, proceedings, and agreements; that the Debtor failed to comply with an Order to Comply from the Los Angeles Department of Building and Safety, despite a compliance opinion from that very department; that the Debtor trespassed on their own premises despite having a valid lease; that the Debtor breached the lease by utilizing the common areas it was expressly permitted to use or that the Debtor obstructed the common areas despite no credible evidence in support; and finally, that the Debtor's bankruptcy filing was somehow the basis for some sort of unfair competition.

All of the claims above were not only contradicted by credible evidence, but appeared to be meritless, motivated by malice, and lacking a basis in law or fact from the outset.

## B. The Lease and Sublease

The Debtor is the tenant under a commercial lease for the first four floors and a portion of the basement in the historic Pacific Stock Exchange Building, located at 618 S. Spring Street, Los Angeles,

California 90014 (the "Property") pursuant to an unexpired Lease (the "2009 Lease") (Trial Exh. 1) as amended by the *First Amendment to the Lease Agreement* dated August 19, 2014 (the "First Amendment") (Trial Exh. 4), and any and all options and extensions thereunder and related thereto (together with the 2009 Lease and First Amendment, the "Lease") between Smart Capital as the original lessor's successor in interest[4] and the Debtor as lessee.

WERM is the subtenant under the *Standard Sublease*, dated October 1, 2009 (Trial Exh. 2), as modified by the *Sublease Amendment* dated October 1, 2019 (the "Sublease Amendment") (Trial Exh. 7), and any and all extensions thereto (together with the Standard Sublease and the Sublease Amendment, the "Sublease") between the Debtor and WERM for the first four floors and a portion of the basement in the Property (the "Premises"). WERM as subtenant operates a nightclub and entertainment venue under the name "Exchange LA."

**C. <u>The Option</u>**

The maturity date under the Lease was December 31, 2025, unless extended through the exercise of a five-year option provided for in the Lease and Amendment. (Trial Exh. 1 §§ 1.23, 3.2; Trial Exh. 4 § 10). On June 25, 2025, the Debtor served notice to Smart Capital of the Debtor's right and election to exercise its option to extend the term of the Lease following expiration of the current Lease term for the additional period of five years through and including December 31, 2030 (the "Lease Option Election"). In the same notice, Smart Capital was also timely notified that the Sublease was similarly extended to coincide with the extended maturity date of the Lease (the "Sublease Option Election" and together with the Lease Option Election, the "Option Election"). The Debtor also filed with the Court a *Notice of the Debtor's Exercise of Option to Extend Lease* on June 26, 2025 (Case Dkt. 308) (the "Notice of Option Election") (Trial Exh. 62).

The Court finds that Debtor timely, properly, and effectively exercised its option to extend the Lease through December 31, 2030. The evidence presented at trial clearly established that Debtor complied with the requirements necessary to exercise the option, provided the requisite notice, and

[4] The original lessor was PAX America Development, LLC. (Trial Exh. 1).

thereafter consistently acted in accordance with the extended Lease term. (Trial Tr. June 11, 2026, at 177:1–177:5). In addition, the Court notes that the Debtor remains in possession of the Premises.

The Court finds wholly unpersuasive and unsupported by the evidence any contention by Smart Capital or Mr. Chang that the option was not properly exercised. (Trial Tr. June 11, 2026, at 177:4–177:5). As discussed more fully below, the Court finds that such contention was instead part of Mr. Chang's scheme to stop the Debtor and WERM from operating and to remove them from the Premises by any means necessary. (Trial Tr. June 11, 2026, at 172:7–177:13). No such contention was raised by Smart Capital or Mr. Chang in any prior paper or pleading, and the Court finds no merit in Mr. Chang's assertion that he objected to the Option Election. No objection was admitted into evidence, and, even if one had been, Mr. Chang identified no provision of the Lease or other legal basis permitting such an objection. To the contrary, the evidence showed that rent was paid timely and that Smart Capital and Mr. Chang refused to cash the rent checks—and, in some instances, voided them—instead of using those funds to pay counsel. (Trial Tr. June 8, 2026, at 45:24–46:5; 79:18–80:7; 80:16–21; Trial Tr. June 10, 2026, at 164:4–10). In sum, the documentary evidence and credible witness testimony establish that the Lease option was validly exercised, the Lease was extended in accordance with its terms, and the Lease remains unexpired. (Trial Tr. June 11, 2026, at 177:15–177:20.)

Accordingly, the Court finds that the Lease and Sublease, together with all amendments thereto, remain valid, enforceable, and in full force and effect through December 31, 2030, and that the Lease and Sublease are capable of being assumed under Section 365(a) of the Bankruptcy Code. Any claims, defenses, or arguments advanced by Smart Capital or Mr. Chang premised upon the expiration or invalidity of the Lease and Sublease are rejected. (Trial Tr. June 11, 2026, at 168:13–168:17).

**D. <u>The Three-Day Notices</u>**

Prior to the initiation of the Bankruptcy Case, Smart Capital and Mr. Chang instituted an action and/or proceeding against the Debtor relating to the provisions of the Lease and alleged defaults thereunder by serving three Three-Day Notices alleging various non-monetary defaults.

Prior to serving the three Three-Day Notices, there was no evidence presented by Smart Capital or Mr. Chang that Smart Capital or anyone on its behalf served a five-day written notice of default in any payment of Minimum Rent or Additional Rent or any other charge as required under Section 16.1 of

the Lease or a fifteen-day written notice of default in the prompt and full performance of any other promises, covenants, or agreements which specified the particulars of the alleged default as required under Section 16.1 of the Lease as modified by Section 15 of the First Amendment.

Pursuant to the Parties' agreement in the Joint Status Report (Case Dkt. 466), only one Three-Day Notice was relevant to the Court's determination at trial, with the remaining two Three-Day Notices being deemed moot and meritless by the *Amended Order Granting Debtor's Motion for Partial Summary Judgment* (Case Dkt. 380) and *Memorandum of Decision Re: Debtor's Motion for Partial Summary Judgment*, *In re Hawkeye Entertainment, LLC*, 675 B.R. 595 (Bankr. C.D. Cal. 2025) (Case Dkt. 371). Though Mr. Chang presented evidence and argument directed at all three of the Three-Day Notices, as well as a litany of other alleged non-monetary defaults, the only Three-Day Notice that was relevant for trial was the Three-Day Notice executed by Mr. Chang on October 13, 2023, on behalf of Smart Capital. This Three-Day Notice sought to terminate the Debtor's and its subtenant WERM's right to possession with claims of nuisance and use of the Premises for a purported unlawful purpose based on various alleged acts by staff and patrons (the "Three-Day Notice"). The Three-Day Notice was not admitted into evidence, but after hearing testimony from Mr. McAbian on the issue (Trial Tr. June 8, 2026, at 121:16–127:5), and as further set forth herein, the Court finds there to be no credible evidence of any use of the Premises for an unlawful purpose by the Debtor or WERM. (Trial Tr. June 11, 2026, at 175:4–175:9). The Court finds the claims to, once again, be fabrications on the part of Mr. Chang and Smart Capital as part of their attempt to stop the Debtor's and WERM's operations and remove them from the Premises. (Trial Tr. June 11, 2026, at 162:12–162:17). As this Court noted on the record following the trial, it is clear that Mr. Chang is motivated to do whatever he can to get rid of the Debtor and WERM. (Trial Tr. June 11, 2026, at 160:10–160:14).

Following the receipt of the Three-Day Notice, the Debtor commenced the Bankruptcy Case by filing a voluntary petition under Chapter 11 the Bankruptcy Code on October 18, 2023.

**E. <u>The Summary Judgment Order</u>**

On December 9, 2025, this Court entered its *Amended Order Granting Debtor's Motion for Partial Summary Judgment* (Case Dkt. 380) (the "Order") and issued its *Memorandum of Decision Re: Debtor's Motion for Partial Summary Judgment*, *In re Hawkeye Entertainment*, LLC, 675 B.R. 595

(Bankr. C.D. Cal. 2025) (Case Dkt. 371) (the "Memorandum"). The Order provides, *inter alia*, that "Smart Capital is precluded from asserting or seeking discovery on alleged defaults under the Lease and Sublease existing prior to entry of the 2020 Assumption Order." (Case Dkt. 380 at 2.) The Court reincorporates the Order and Memorandum herein and reiterated and affirmed those findings during trial.

Specifically, the Court reaffirms and finds that any alleged default arising prior to October 27, 2020, the date of the 2020 Assumption Order (as identified in the Memorandum), was cured, resolved, waived, released, adjudicated, or otherwise extinguished by operation of the 2020 Assumption Order and may not serve as a basis for any claim, defense, counterclaim, setoff, recoupment, or other theory of recovery asserted by Smart Capital or Mr. Chang. The Court finds that the release language in the *Settlement Agreement and Mutual Release of Claims* (the "Settlement Agreement") is broad and is a full and complete release of any and all known and unknown claims. (Trial Exh. 3 § 10.) The Court finds that Mr. Chang initialed each page of the Settlement Agreement. (Trial Exh. 3; Trial Tr. June 8, 2026, at 176:25–178:3.) Importantly, although initially drafted between the Debtor and New Vision Horizon, LLC ("New Vision"), Mr. Chang testified that Smart Capital purchased the Property from New Vision (an entity also owned and controlled by Mr. Chang) (Trial Tr. June 8, 2026, at 64:20–22), and the Settlement Agreement expressly states that it "shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns." (Trial Exh. 3 § 13.) It is also worth noting that the Lease itself contains a similar successors and assigns provision. (Trial Exh. 1 § 22.11(e).) The Settlement Agreement goes on to accept and approve the Lease and Sublease. (Trial Exh. 3 §§ 4, 6.) For avoidance of doubt, the Court finds that Smart Capital purchased the Property subject to the Lease, Sublease, Settlement Agreement, and any and all amendments thereto. (Trial Tr. June 11, 2026, at 160:1–160:2).

Accordingly, any evidence, testimony, argument, or other matter offered by Mr. Chang concerning alleged defaults predating October 27, 2020, was irrelevant to the issues remaining for trial except to the limited extent necessary to provide background or context. (Trial Tr. June 11, 2026, at 159:6–159:13.) Such evidence could not establish a default under the Lease or Sublease and could not form the basis for any relief sought by Smart Capital or Mr. Chang.

To the extent that Mr. Chang attempted at trial to rely upon conduct, events, notices, alleged breaches, or purported defaults occurring before October 27, 2020, the Court finds that such matters were barred by the Order and Memorandum and afforded them no weight in determining the merits of the remaining claims and counterclaims. (Trial Tr. June 11, 2026, at 166:7–166:11.) The Court further finds that the only defaults potentially at issue in this proceeding are those allegedly arising after October 27, 2020, and not otherwise foreclosed by subsequent orders of this Court. (Trial Tr. June 11, 2026, at 159:14–159:18.)

**F. <u>Mr. Chang's Testimony</u>**

As a threshold matter, the Court finds that Mr. Chang's testimony was not credible. (Trial Tr. June 11, 2026, at 161:2–161:9.) Based on the evidence presented at trial, the Court finds that Mr. Chang, both individually and through his control of Smart Capital, was not motivated by good faith, probable cause, or the actual seeking of redress. Instead, the evidence established that Mr. Chang and Smart Capital had economic and malicious motivations. (Trial Tr. June 11, 2026, at 160:10–162:17; *see also id*. at 161:24–162:4 (Mr. Chang "tended to exaggerate events, mischaracterize events and, in some cases, fabricate them out of whole cloth.").) Mr. Chang's testimony made his goals clear: to either pursue the Debtor and WERM to such an extent that they capitulated and paid additional rent or to fabricate non-monetary defaults so that the Debtor and WERM would be evicted, allowing Smart Capital to lease the Premises to another tenant on more favorable economic terms. (Trial Tr. June 11, 2026, at 160:24–161:1.) On numerous occasions, Mr. Chang's testimony at trial was contradicted by his prior testimony from this action and from other prior bankruptcies and other actions between the Parties. (*See, e.g.,* Trial Tr. June 10, 2026, at 127:21–130:9.)

The Court further finds that, when confronted with questions that called for answers unfavorable to his position, Mr. Chang frequently failed to answer the question asked. (Trial Tr. June 11, 2026, at 161:18–162:4.) Instead, Mr. Chang would change the subject, provide non-responsive answers, or attempt to redirect the examination to unrelated matters. (Trial Tr. June 11, 2026, at 161:18–161:24.) On multiple occasions, Mr. Chang attempted to answer questions with questions of his own directed to the Court or counsel for the Debtor and WERM, rather than providing a responsive answer. (Trial Tr.

June 11, 2026, at 161:18–161:24.) This pattern was evident throughout his testimony and further undermined his credibility. (Trial Tr. June 11, 2026, at 161:24–162:4.)

Prior to the trial, Smart Capital's then-counsel moved to withdraw and sought a continuance of the trial for that reason and that reason alone. (Tr. Apr. 28, 2026, at 11:13–11:19; Trial Tr. June 11, 2026, at 154:9–154:20.) The basis for the withdrawal was largely Mr. Chang and Smart Capital's decision to stop paying its legal bills. (Tr. Apr. 28, 2026, at 24:6–24:10; Trial Tr. June 11, 2026, at 154:9–154:13.) The Court granted the Motion to Withdraw but denied the continuance finding that based on the facts before the Court, the record, failure to pay legal bills, apparent financial ability to employ other professionals in the various nonbankruptcy litigation, and the timing of the late withdrawal of counsel, the requested continuance was a manufactured delay tactic by Smart Capital and Mr. Chang. (Case Dkt. 541; Tr. Apr. 28, 2026, at 27:20–31:21; Trial Tr. June 11, 2026, at 154:25–155:5.) After hearing the evidence at the trial, the Court finds that those prior findings of a manufactured delay tactic are even more strongly supported. (Trial Tr. June 11, 2026, at 155:5–155:7.) The evidence established that Smart Capital and Mr. Chang retained and were actively employing and paying at least two, if not more, other lawyers and law firms in numerous other disputes involving the same parties, including Mr. Paul Pham who tangentially participated in this matter. (*See* Tr. Apr. 28, 2026, at 18:25–19:1; Trial Tr. June 8, 2026, at 203:19–204:1.)

In addition, Mr. Chang intimated that Smart Capital would be appealing this Court's findings—an action that would require the hiring of counsel. (Trial Tr. June 11, 2026, at 101:4–101:8.) And, as noted above, Smart Capital refused to negotiate the Debtor's rent checks commencing January 2026 (and did not seek to confirm a further agreement or order that acceptance of the rent was pursuant to Section 363(d)(3) and was not prejudicial to any of Smart Capital's rights); had Smart Capital done so, Smart Capital would have had sufficient funds to pay its counsel. (Trial Tr. June 11, 2026, at 96:11–96:19.) What is more, following trial, Smart Capital and Mr. Chang retained another attorney, Daniel B. Spitzer of the Law Offices of Daniel B. Spitzer, who appeared at the hearings held on June 30, 2026, and subsequently filed a 55-page objection to the Debtor's proposed findings of fact and conclusions of law (Adv. Dkt. 145.) Under these circumstances, and based on the timing and surrounding facts, the Court

finds that Smart Capital's inability or failure to appear through counsel at trial was a litigation tactic intended to delay these proceedings. (Trial Tr. June 11, 2026, at 154:25–155:5.)

The Court also finds that Mr. Chang repeatedly mischaracterized documents, testimony, and other evidence, at times fabricating facts out of whole cloth, in a manner designed to advance his own position. (Trial Tr. June 11, 2026, at 162:15–162:17.) Mr. Chang refused to acknowledge the terms and validity of the Lease, the Settlement Agreement, certain documents from the City of Los Angeles ("City"), and more. These misstatements were not isolated or immaterial. Rather, they reflected a broader pattern of selective and self-serving testimony that undermined Mr. Chang's credibility as a witness. For these reasons, the Court gives little weight to Mr. Chang's testimony except where it is corroborated by other credible evidence in the record. (Trial Tr. June 11, 2026, at 161:24–162:4.)

Additionally, the Court finds that although Mr. Chang repeatedly urged the Court to deny the 2023 Assumption Motion based on a litany of purported defaults, he never once identified a specific provision of the Lease or Sublease that the Debtor or WERM allegedly violated. (Trial Tr. June 11, 2026, at 163:4–163:7.) Instead, Mr. Chang offered broad accusations of misconduct, fraud, unauthorized work, permitting issues, and operational concerns without tying those allegations to any particular contractual obligation contained in the Lease or Sublease. The Court recognizes that Mr. Chang is not an attorney. (Trial Tr. June 11, 2026, at 163:8–163:11.) However, Mr. Chang testified under oath that he has been involved in the commercial real estate business for approximately thirty years. (Trial Tr. June 11, 2026, at 164:7–164:9.) Even with that experience, Mr. Chang was unable to direct the Court to a single Lease or Sublease provision that he contended had been breached. (Trial Tr. June 11, 2026, at 164:7–167:15.) Indeed, despite several days of testimony and argument concerning alleged defaults, the Court never received from Mr. Chang a straightforward explanation of which contractual provision had been violated, how that provision had been violated, and what evidence established the alleged breach. (Trial Tr. June 11, 2026, at 163:4–163:7.)

The Court finds this omission particularly significant because the existence of a default under the Lease or Sublease necessarily requires proof that a specific contractual obligation was breached. Without identifying the underlying contractual provision, the arguments and testimony amounted to little more than generalized grievances regarding the Debtor's operations and Mr. Chang's longstanding

disputes with the Debtor and WERM. Accordingly, the Court finds that Mr. Chang's inability to identify any specific Lease or Sublease provision allegedly breached substantially undermines the credibility and weight of Smart Capital's default allegations.

**G. <u>Mr. McAbian's Testimony</u>**

By contrast, the Court finds Mr. McAbian's testimony to be credible, knowledgeable, and helpful. (Trial Tr. June 11, 2026, at 162:5–162:11.) Throughout the trial, Mr. McAbian demonstrated a detailed familiarity with the Premises, the Lease, the Sublease, the operations of Exchange LA, and the events giving rise to this litigation. (Trial Tr. June 11, 2026, at 162:6–162:11.) His testimony was consistent with the documentary evidence and other credible testimony presented at trial. (Trial Tr. June 11, 2026, at 162:9–162:11.)

The Court further finds that Mr. McAbian testified in a straightforward manner and readily acknowledged facts that were unfavorable to his position when appropriate. Unlike Mr. Chang, Mr. McAbian did not appear to tailor his testimony to fit a particular litigation narrative. Rather, his testimony reflected a genuine effort to answer the questions posed and provide the Court with an accurate account of the relevant events. Accordingly, where the testimony of Mr. McAbian conflicts with that of Mr. Chang, the Court credits the testimony of Mr. McAbian.

**H. <u>Smart Capital and Mr. Chang's Lack of Participation</u>**

On April 20, 2026, Greenspoon Marder LLP and Schorr Law, A Professional Corporation (collectively, "Prior Counsel"), moved to withdraw as counsel for Mr. Chang and Smart Capital. (Case Dkt. 520.) In connection with that Motion, Prior Counsel made a request to continue all hearings, deadlines, and the trial. On May 5, 2026, the Court entered its Order allowing Prior Counsel to withdraw but denying any request to continue any deadlines or trial. (Case Dkt. 541.)

Thereafter, the Parties' Pre-Trial Stipulation pursuant to Local Bankruptcy Rule 7016-1(b)(2) was due by June 15, 2026. Despite efforts to confer with Smart Capital, its assistant general counsel, Paul Pham, and Mr. Chang regarding the requirements of the Pre-Trial Stipulation, Smart Capital and Mr. Chang's refusal to participate (Case Dkt. 550) resulted in the Debtor and WERM having to file a Unilateral Pre-Trial Stipulation (Case Dkt. 548). Smart Capital and Mr. Chang refused to provide a list of witnesses, a list of exhibits to be used at trial or exchange any exhibits. The Debtor and WERM also

submitted a Trial Brief (Case Dkt. 571) in compliance with the Court's Scheduling Order (Case Dkt. 569), but neither Smart Capital nor Mr. Chang submitted any pre-trial briefing.

Smart Capital did not respond to the Motion to Strike Experts (Case Dkt. 553) (the "Motion to Strike") filed by the Debtor by the Court's June 5, 2026, deadline (Case Dkt. 569). Therefore, at the start of the trial, the Court heard argument on the Motion to Strike and granted the Motion to Strike (Case Dkt. 585).

Nonetheless, to ensure that Mr. Chang was afforded every opportunity to present his case, the Court proceeded with the trial on the merits. The Court further notes that, although Smart Capital did not appear through counsel, Mr. Chang (who testified that he is the controlling member of Smart Capital) appeared, testified extensively, cross-examined witnesses, and offered documentary evidence in support of his and Smart Capital's positions. (Trial Tr. June 11, 2026, at 162:20–163:1.) Counsel for the Debtor and WERM stated their objection to the timeliness of Mr. Chang's proffered exhibits—which the Court noted—but otherwise agreed to the admissibility of all exhibits that Mr. Chang offered that were capable of authentication and not replete with inadmissible hearsay. (Trial Tr. June 11, 2026, at 146:19–147:10; Case Dkt. 608 (Memorandum of Exhibits Admitted at Trial)) Accordingly, the Court is satisfied that it effectively has heard the evidence and arguments in support of Smart Capital's arguments and claims, in addition to those of Mr. Chang.[5]

Having considered that evidence, however, the Court finds Smart Capital's positions to be unpersuasive. (Trial Tr. June 11, 2026, at 176:23–177:5.) The Court's ruling is not the result of any procedural deficiency arising from Smart Capital's lack of counsel. Rather, the Court finds that Smart Capital failed to carry its burden of producing evidence sufficient to establish the existence of any default under the Lease on the merits and only alternatively makes its findings on theory of default for lack of counsel under Local Bankruptcy Rule 9011-2(a). (Trial Tr. June 11, 2026, at 165:11–165:13.)

---

[5] Mr. Chang did not object to and therefore is not a party to the 2023 Assumption Motion or Compliance Motion. (Dkt. 70 at 2, Dkt. 116 at 2, 150, He likewise is not a Counterclaimant against the Debtor. (Adv. Dkt. 34 at 2-3). Nevertheless, virtually all of the evidence and argument he offered at trial sought to demonstrate that the Debtor was in default under the Lease, i.e., the central claim of Smart Capital in those proceedings.

The Court further notes that, despite Smart Capital's and Mr. Chang's failure to participate in the Pre-Trial Stipulation and the resulting limitations imposed by the Court's prior orders, the Court nevertheless afforded Mr. Chang considerable latitude during trial. (Trial Tr. June 11, 2026, at 147:5–147:10.) In particular, the Court permitted Mr. Chang to offer exhibits and argument, and the Court evaluated the admissibility of proposed exhibits on their individual merits rather than excluding them solely based on the Debtor and WERM's timeliness and procedural objections, as noted above. (Trial Tr. June 11, 2026, at 146:19–147:10.)

The Court, therefore, concludes that Mr. Chang was given every reasonable opportunity to present his evidence and that the Court's findings are based on a full consideration of the record developed at trial.

**I. <u>The Alleged Defaults</u>**

In support of their objection to the 2023 Assumption Motion and Compliance Motion, Smart Capital (through written opposition(s)) and Mr. Chang (through declarations and evidence submitted at trial) attempted to assert various alleged defaults. Such defaults also formed the basis of the Counterclaims. (Trial Tr. June 11, 2026, at 183:13–183:20). During trial, the Court informed the Parties that, in addition to those alleged defaults set forth in the Three-Day Notice and additional alleged defaults discussed throughout trial, the Court wanted to hear evidence regarding the alleged defaults mentioned in Pages 12–14 of the Court's Memorandum. (Case Dkt. 371 at 12–14.) Each of such defaults addressed at the trial will be referenced herein in turn.

For the reasons set forth further herein, after considering all evidence presented during the four-day trial, the Court finds that Smart Capital and Mr. Chang failed to establish any existing default under the Lease or Sublease. Indeed, the Court finds that no reasonable litigant in Smart Capital or Mr. Chang's position would have believed there were legally valid or reasonable grounds to pursue counterclaims against the Debtor or WERM or to object to assumption of the Lease. The evidence established that Mr. Chang has strongly-held beliefs, but those beliefs—and, in turn, Smart Capital's Counterclaims and the defaults that Smart Capital alleges—were motivated by ill will—not fact or reason. (Trial Tr. June 11, 2026, at 161:9–161:16.) The Court expressly finds that the Debtor and WERM are not in default under the Lease or the Sublease, including with respect to any alleged

monetary default or non-monetary default, and that no cure payment or cure obligation is required as a condition of assumption.

1. Alleged Pre-2020 Defaults

For the reasons already stated herein, to the extent that Mr. Chang relied upon alleged defaults arising prior to entry of the 2020 Assumption Order, such arguments are without merit. The Court previously determined that alleged defaults predating the 2020 Assumption Order were released by the Settlement Agreement and are barred by claim preclusion and issue preclusion. (Trial Tr. June 11, 2026, at 166:7–166:11.) Accordingly, the Court finds that any alleged default arising prior to the 2020 Assumption Order cannot constitute a present default under the Lease and cannot serve as a basis to oppose assumption of the Lease.

2. Damage to the Historical Ceiling Tiles

During trial, the Parties introduced evidence and testimony that there was a ceiling tile that fell at the Premises on January 20, 2024. Mr. Chang advanced the theory that the damage must have been caused by the Debtor or WERM. (Trial Tr. June 11, 2026, at 164:25–165:3.) However, the Court finds that this theory was based on speculation rather than evidence. (Trial Tr. June 11, 2026, at 165:14.)

The Court finds that Mr. Chang appeared convinced that the Debtor or WERM caused the damage and clearly desired that conclusion to be true. (Trial Tr. June 11, 2026, at 164:25–165:3.) But, no matter how strong Mr. Chang's belief, Mr. Chang offers no evidence outside of his professed conviction that supports this conclusion. (Trial Tr. June 11, 2026, at 165:4–165:7.) After considering all of the evidence presented during the trial, the Court finds that Smart Capital failed to present any credible evidence establishing that the Debtor, WERM, or any of their employees or agents caused the damage. (Trial Tr. June 11, 2026, at 165:5–165:7.) The evidence shows that Mr. Chang did not personally observe the damage occur, did not present testimony from any witness who observed the damage occur, and did not present any expert testimony or other competent evidence establishing the cause of the damage. (Trial Tr. June 11, 2026, at 165:7–165:8.)

At most, Mr. Chang presented evidence that certain individuals may have had access to the area at various points in time and invited the Court to infer from that fact that the Debtor or WERM must have been responsible. (Trial Tr. June 11, 2026, at 165:14–165:21.) The Court declines to make such

an inference. The evidence established that multiple individuals and entities had access to the Premises over an extended period of time, including Smart Capital's employees (Trial Exh. 11), and the record contains insufficient evidence for the Court to determine what caused the damage, when it occurred, or who was responsible for it. (Trial Tr. June 11, 2026, at 165:14–165:21.) In other words, Smart Capital has not carried its burden of producing evidence to establish either a default under the Lease on the Motion to Assume Lease or a breach of the Lease under its Counterclaim.

The Court further finds that there are numerous possible explanations for the condition of the tile, including causes unrelated to the Debtor or WERM. (Trial Tr. June 11, 2026, at 165:14–165:21.) On the evidentiary record before the Court, any determination that the Debtor or WERM caused the damage would be based solely on conjecture.

The Court therefore finds that there is no default under the Lease arising from the condition of the ceiling tile at the Premises.

3. <u>Holes in the Historic Ceiling</u>

Next, Mr. Chang made various arguments related to twenty-five holes in the historic ceiling through which there is access to certain rigging points for production equipment, which Mr. Chang contended was another breach. (Trial Tr. June 11, 2026, at 165:22–166:1.) As a threshold matter, Mr. Chang introduced no evidence as to when such holes were made, and Mr. McAbian testified that the holes pre-dated the Debtor's tenancy, which the Court finds credible. (Trial Tr. June 10, 2026, at 177:24–178:5; 181:11–20; 182:11–19; 194:24–196:6.) Further, Mr. McAbian introduced evidence showing that the production truss was in place prior to the Debtor's tenancy. (Trial Exh. 30, 31.) Additionally, an exhibit entered into evidence by Mr. Chang confirms that the 25 holes in the historic ceiling existed before the Debtor became a tenant under the Lease. (Trial Exh. I at 2) ("Charles Tan + Associates is providing this letter to clarify we will qualify the hanging rod anchor points are actually existing versus providing new anchors."). Additionally, Mr. Chang himself testified that he was not present when the holes were made. (Trial Tr. June 10, 2026, at 34:6–8.) Mr. McAbian testified that the Premises had been adapted and utilized as a nightclub for many years prior to the Debtor's tenancy. (Trial Tr. June 10, 2026, at 180:2, 180:24–180:25.)

Smart Capital has not carried its burden of producing evidence of either a default under the Lease on the Motion to Assume Lease or a breach of the Lease under its Counterclaim.

The Court therefore finds that there is no default under the Lease arising from the holes or anchor points in the ceiling of the Premises.

4. Netting Truss

Evidence was produced demonstrating that, following the fall of the historic ceiling tile, a netting truss was installed to protect patrons from any further potential falling debris. (Trial Tr. June 8, 2026, at 100:1–111:11.) Mr. Chang argued that this was a breach of the Lease insofar as it constituted an "Alteration" pursuant to Section 10.1 of the Lease which required the landlord's prior approval. After reviewing the evidence, including photographs of the netting truss structure (Trial Exh. 31), the Court is satisfied that the netting truss structure is freestanding and is not permanently attached to the building and that the Debtor and WERM, with the assistance of engineers and other professionals, implemented a netting system designed to protect patrons, employees, and the Premises from falling debris originating from the historic structure. (Trial Tr. June 11, 2026, at 166:22–167:7.)

The Court finds that the netting system and supporting truss were not permanently affixed to the building, did not alter the structure of the building, and did not constitute construction or an unauthorized alteration of the Premises under the Lease. (Trial Tr. June 11, 2026, at 166:22–167:7.) Further, Mr. McAbian credibly testified that the netting truss system cost less than the $100,000 threshold present in the Lease, such that the Debtor and WERM need not have obtained the prior written consent of Smart Capital. (Trial Tr. June 8, 2026, at 117:9–117:11; *see* Trial Exh. 1 § 10.5(a).) The Court further finds that Mr. Chang failed to present credible evidence establishing that the installation was an "Alteration" under Section 10.1 of the Lease or that it violated any provision of the Lease or otherwise constituted a default. (Trial Tr. June 11, 2026, at 166:15–167:21.)

To the contrary, the evidence demonstrated that the netting system provided a substantial benefit not only to the Debtor and WERM, but also to Smart Capital as owner of the building. (Trial Tr. June 11, 2026, at 167:3–167:7.) The system was installed to protect against the risk of falling debris from the historic structure and thereby enhanced the safety of patrons, employees, invitees, and the Premises

itself. (Trial Tr. June 11, 2026, at 167:17–167:21.) The Court finds that the netting system addressed a safety concern that otherwise would have exposed both the tenant and landlord to potential risk.

Again, Smart Capital has not produced evidence sufficient to establish the existence of a default under the Lease on the Motion to Assume Lease or a breach of the Lease under its Counterclaim.

Accordingly, the Court finds that the installation and maintenance of the netting system and supporting truss did not constitute a default under the Lease or Sublease. Rather, the evidence established that the system was a reasonable and beneficial safety measure that protected persons and property from potential hazards associated with the condition of the building.

5. PA-4/PA-5

At trial, Mr. Chang devoted substantial time to Mr. Chang's uncorroborated contention that he discovered a purported fraud on Smart Capital and the City of Los Angeles arising from Mr. McAbian's signature on a Master Covenant Agreement (the "MCA") executed more than a decade ago in connection with ZA-1995-830-CUB-PA-4 issued February 25, 2013 ("PA-4"), a conditional use permit that allows the Premises to be used as a nightclub. The Court has previously addressed these arguments in its Memorandum and Order and reiterates those findings herein. For the avoidance of doubt, the Court finds that any argument that the MCA was improperly executed or that PA-4 was procured by fraud is barred by the doctrines of res judicata and collateral estoppel and are not subject to relitigation.

Nonetheless, as it did on the record at the close of trial, the Court will address some of Mr. Chang's arguments. The Court finds that Mr. Chang's claim that he only recently discovered the PA-4 MCA executed by Mr. McAbian, which forms the basis of his alleged fraud is not credible. The evidence established that the documents upon which Mr. Chang now relies were matters of public record for years. Based on the evidence and testimony, it is clear that Mr. Chang and Smart Capital thought up the idea that Mr. Chang and Smart Capital could get rid of the Debtor and WERM by trying to block ZA-1995-830-CUB-PA-5 ("PA-5") (Trial Exh. 21) from being issued by concocting a claim based on a decade-old public record. The Court finds that Mr. Chang simply failed to pursue these arguments when he and his affiliated entities had the opportunity to do so during the prior bankruptcy cases. As the Court previously held, Mr. Chang cannot avoid the preclusive effect of prior orders by characterizing long-extant public records as newly discovered evidence.

Further, in response to Mr. Chang's contention that he and Smart Capital did not discover the alleged fraud until after October 27, 2020, the Debtor introduced testimony and documentary evidence demonstrating otherwise. In addition to the fact that the document has been a public record since 2013, the Debtor introduced a version of PA-4 containing handwritten notes and annotations that was produced by Smart Capital in discovery in the Second Bankruptcy (Trial Exh. 66), as well as referenced testimony from Mr. Chang's prior deposition in which Mr. Chang acknowledged that those notes would have been made and transcribed before October 27, 2020. (Trial Tr. June 10, 2026, at 138:3–142:10.) The Court also heard—and saw, when Mr. Chang was being impeached—testimony that Mr. Chang himself testified regarding PA-4 at the prior bankruptcy trial. (Trial Tr. June 10, 2026, at 198:19–199:21.) The Court finds this significant because it establishes that Mr. Chang and Smart Capital were aware, or at a minimum had sufficient information to become aware, of the very facts that now form the basis of his fraud allegations prior to October 27, 2020. Accordingly, the Court rejects Mr. Chang's assertion that the alleged fraud was first discovered after October 27, 2020, and finds that the evidence presented at trial demonstrates that the underlying facts were known, or reasonably should have been known, to Mr. Chang before that date.

Mr. Chang's testimony then evolved into claims that PA-4 and the affiliated MCA from 2013 signed by Mr. McAbian, created a cloud on the Property's title. However, it appears there is no cloud on title to the Property whatsoever. First, the evidence made clear that PA-4 is expired and is superseded by PA-5. (Trial Exh. 21.). Second, Mr. Chang, when pressed, conceded that while title to the Property has been reviewed in connection with Mr. Chang's obtaining multiple loans on the Property, there is not a single title report reflecting a cloud on title caused by the PA-4 MCA or any document or report showing that the owner of the Property is any entity other than Smart Capital. Mr. Chang was successfully able to obtain tens of millions of dollars of loans or lines of credit from various financial institutions. (Trial Tr. June 10, 2026, at 117:1–120:24.)

Mr. Chang acknowledged that the PA-4 MCA did not affect title in terms of his ability to subsequently encumber the Property with consensual liens, but it appears that Smart Capital and Mr. Chang were instead utilizing it as a pretext to invalidate PA-5 as part of their ongoing efforts to shut down or evict the Debtor and WERM.

The evidence establishes that PA-5 confirms that PA-4 expired and is therefore seemingly no longer of any force or effect. The evidence demonstrates that PA-5 requires that a new MCA be recorded. The evidence further establishes that since its issuance, the Debtor has made several requests that Smart Capital and Mr. Chang execute the MCA for PA-5, and that Smart Capital and Mr. Chang have refused and failed to execute it.

Mr. Chang's theory continued to evolve throughout the trial. Initially, Mr. Chang contended that PA-4 was void, fraudulent, or clouding title. When confronted with the legal and factual deficiencies of that position, however, the argument shifted to the assertion that PA-5 must be void because PA-4 was allegedly void and that somehow the Debtor *used* PA-4 to obtain PA-5. The Court finds both arguments to be wholly without merit.

The evidence established that PA-4 is not void. To the contrary, the evidence demonstrated that the City of Los Angeles was fully aware of Mr. Chang's allegations, including the public documents that Mr. Chang characterized as a "smoking gun," and nevertheless determined that PA-4 remained valid and effective. The City further rejected Mr. Chang's challenges and approved PA-5 notwithstanding his objections. (Trial Exh. 21.) In fact, PA-5 itself contains the following language: "In considering the relevance of this use, the Zoning Administrator has concluded that the discussion on the validity of the CUB-PA4 entitlement is moot." (Trial Exh. 21-16.) The Court further acknowledges that Mr. Chang continues to disagree with those governmental determinations—indicating that he would be pursuing a state court appellate procedure to attempt to void PA-5. There is no evidence, however, that PA-5 has been vacated, overturned, or enjoined by any court or governmental entity.

Mr. Chang's disagreement does not render PA-4 or PA-5 invalid and does not establish a default under the Lease or Sublease. The evidence establishes that the City issued PA-3, PA-4 and recently PA-5 and they were never revoked. At all times, the Debtor and WERM operated pursuant to, and consistent with, the authority of, and the conditions and requirements imposed under, PA-3, PA-4, and recently PA-5. Therefore, the evidence establishes that the Debtor and WERM were not in default of Article 9 or any other provision of the Lease; that there is no credible evidence submitted that the Debtor and WERM failed to operate in compliance with all governmental laws, ordinances, rules, regulations

and orders applicable to the Premises as required under Section 9.5 of the Lease; and that the Debtor and WERM used and occupied the Premises consistent with the Permitted Use under the Lease.

Finally, it is undisputed that Mr. McAbian executed the PA-4 MCA in 2013. The Settlement Agreement executed in 2014 (Trial Exh. 3) contains a release by Smart Capital (as successor in interest to New Vision Horizon, LLC) of the Debtor and, among others, its officers, directors, agents, employees, and representatives. The release is a full and complete general release of all known and unknown claims. Thus, even if Smart Capital and Mr. Chang did not know of the PA-4 MCA—a notion that this Court rejects—the claim would be released as to the Debtor and its representatives, including Mr. McAbian, whose signature Mr. Chang contends forms the basis of this non-existent fraud.

Accordingly, the Court finds that PA-4 remains valid and that PA-5 was properly issued. There is no credible evidence presented by Smart Capital or Mr. Chang that Mr. McAbian engaged in fraud in connection with his execution of the PA-4 MCA in 2013. There is, however, credible evidence that Mr. McAbian executed the PA-4 MCA with the good-faith belief that he had the right and authority to do so. Furthermore, there is no evidence of a revocation of PA-4 by the City, and the City has issued and not revoked PA-5. Neither PA-4 nor PA-5 nor any MCA executed in connection therewith gives rise to any default under the Lease or Sublease.

The Court further finds that Mr. Chang and/or Smart Capital failed to establish any default relating to the process, the Master Covenant Agreement, or the allegations of fraud asserted by Mr. Chang. Indeed, Mr. Chang's arguments in this regard are wholly without merit and, once again, motivated by spite or a persistent scheme to stop the Debtor's and WERM's operations and remove them from the Premises.

The evidence established that the only impediment to fully memorializing PA-5 in the public records is Smart Capital's and Mr. Chang's refusal to execute the covenant documentation required by the City despite repeated requests of the Debtor for them to do so. (Trial Exh. 63.) The Court therefore finds that any issue concerning the recording of PA-5 is attributable to the conduct of Smart Capital, not the Debtor or WERM.

Smart Capital and Mr. Chang have not come forward with any evidence demonstrating the existence of either a default under the Lease on the Motion to Assume Lease or a breach of the Lease under its Counterclaim.

6. Construction Work

At trial, Mr. Chang repeatedly asserted that the Debtor and WERM performed unpermitted and unauthorized work at the Premises without obtaining the landlord's prior consent. However, the Court finds that Mr. Chang's testimony concerning the nature of the alleged construction was vague, inconsistent, and lacking in specificity. Throughout the trial, Mr. Chang repeatedly stated that he did not provide consent for certain work, but Mr. Chang never clearly identified the particular Lease provision allegedly violated, nor did he clearly articulate what specific construction activity constituted the alleged default, especially in light of the fact that Smart Capital also performed construction activities at the Premises.

The Court further notes that Mr. Chang's testimony was inconsistent regarding whether the relevant consent needed was his personal consent or the consent of Smart Capital as landlord. The Court finds that Mr. Chang frequently conflated his own personal views with the actions and authority of Smart Capital and treated the two as interchangeable, despite the fact that Smart Capital had other employees that have coordinated with the Debtor and WERM.

Based on the evidence presented, however, the Court understands Mr. Chang's allegations to concern, among other things, the ceiling tile, replacement of certain winches, components of the truss and rigging system used to support production equipment, construction of the netting truss—addressed previously—and certain bolts embedded in concrete that support portions of the production system. The Court finds, however, that Smart Capital failed to present credible evidence establishing that the Debtor or WERM installed most of the items about which Mr. Chang complained. On the contrary, the Court received evidence that certain of the truss systems pre-dated the Debtor's tenancy. (Trial Exhs. 30, 31; Trial Tr. June 9, 2026, at 133:5–133:11.)

To the extent that the evidence established that the Debtor or WERM replaced existing winches, the Court finds that such work did not constitute a structural alteration, modification of the Premises, or construction requiring landlord consent under the Lease. (Trial Tr. June 10, 2026, at 190:8–190:10,

193:23–190:25 (winches are not permanently affixed to Premises and their replacement cost less than $100,000); *see* Trial Exh. 1 § 10.5(a).) Rather, the replacement of existing winches constituted replacement of operational equipment necessary for the safe functioning of the venue. (Trial Tr. June 10, 2026, at 190:18–190:20 (Mr. McAbian's testimony that the winches "hold a lot of weight above people's heads," "were 20 years old," and need to be "inspected and certified every year.").) The evidence demonstrated that the winches support substantial production equipment and serve important safety functions. (*Id*. at 193:22 (Mr. McAbian's testimony that the winch motors are "a piece of production equipment.").) The Court further finds that replacement of worn or outdated equipment with functioning equipment is consistent with the ordinary operation and maintenance of a venue such as Exchange LA.

The Court therefore finds that Smart Capital failed to establish that any of the complained-of work constituted unauthorized construction, an impermissible alteration, or a default under the Lease or Sublease. To the contrary, the evidence demonstrated that much of the work identified by Mr. Chang involved safety-related equipment, maintenance, replacement of existing components, or conditions for which Smart Capital failed to establish any connection to the Debtor or WERM.

Smart Capital has not come forward with credible evidence establishing the existence of either a default under the Lease on the Motion to Assume Lease or a breach of the Lease under its Counterclaim.

Accordingly, the Court finds that no default exists or ever existed arising from the alleged unauthorized construction, alterations, improvements, rigging, production equipment, winches, ceiling openings, or related conditions at the Premises.

7. <u>The Order to Comply</u>

On February 20, 2026, Smart Capital received an *Order to Comply and Notice of Fee* (Trial Exh. C) (the "Order to Comply") from the City of Los Angeles Department of Building and Safety ("LADBS"). The Order to Comply listed four "Violations," including orders to "Obtain all required building permits for all the work that has been performed," "Submit all required plans and obtain all required approvals," and "Obtain the required electrical permit, expose concealed work and call for required inspections." (Trial Exh. C.)

First, the evidence established that it was Mr. Chang himself that complained to LADBS in an attempt to either have the Debtor or WERM cited, or have the building shut down in an attempt to once again disrupt the Debtor's or WERM's operations. (Trial Tr. June 10, 2026, at 144:10–23.) Additionally, the Court notes that there was no evidence that the Debtor or WERM actually caused the violations in the Order to Comply—on the contrary, Mr. McAbian testified credibly that any such work would have been done prior to the Debtor/WERM's tenancy at the Premises—Mr. Chang offered no credible testimony or evidence to the contrary and in fact conceded he did not know when the violations occurred. (Trial Tr. June 8, 2026, at 85:21–87:19.) Nonetheless, Mr. Chang and Mr. McAbian testified that Mr. Chang, through his representatives, sent the Order to Comply to Debtor and demanded that the "Violations" be cured. (Trial Tr. June 10, 2026, at 217:3–218:13; 219:15–220:12; 144:10–23.) Thereafter, the Debtor/WERM presented evidence that they complied with the Order to Comply and that LADBS has since closed the Order to Comply (Trial Exh. 15). The Court finds LADBS' decision persuasive as whether the Debtor and WERM defaulted under the Lease or Sublease by purportedly failing to maintain the Premises in accordance with City regulations.

Nonetheless, Mr. Chang argued that the Debtor and WERM's efforts to comply with the Order to Comply constituted a violation of the Lease because, according to Mr. Chang, the Lease required Smart Capital's prior approval before any work could be performed at the Premises. In other words, Mr. Chang demanded that the Debtor complete specific work, but once the Debtor complied and completed the work, Mr. Chang and Smart Capital claimed that the Debtor did not have permission to complete the work that Mr. Chang and Smart Capital told the Debtor to complete. (Trial Tr. June 8, 2026, at 190–191 (Mr. Chang's testimony that "in order to resolve the order to comply, the[ Debtor] need[ed] the owner's consent, but they didn't obtain the owner's consent.").) The Court finds this argument to be utterly devoid of merit.

The evidence established that Smart Capital, through its representatives, transmitted the Order to Comply to Debtor and WERM and expressly directed the Debtor and WERM to address and correct the violations identified therein. (Trial Tr. June 9, 2026, at 79:13–18; Trial Tr. June 11, 2026, at 173:6–173:11.) Having instructed the Debtor and WERM to undertake the corrective work, Smart Capital and

Mr. Chang cannot now credibly contend that the Debtor and WERM lacked authority to perform the very work Smart Capital demanded they perform.

In addition, Mr. Chang contends that the Debtor failed to comply with the Order to Comply when the Debtor brought the Premises into compliance with the Order to Comply. However, the LADBS—the very governmental body who is charged with evaluating compliance—found that the Debtor did precisely what it was required to do and all of the violations and items in the Order to Comply were now closed and in compliance. (Trial Exh. 15) (noting that the Order to Comply was "Closed"). Still, Mr. Chang disagrees; Mr. Chang believes that the Debtor is wrong, believes that the LADBS is wrong, and—based on his comment during closing argument that this Court is not an expert—Mr. Chang apparently believes that this Court is wrong. But Mr. Chang's arguments reflect a different construction of reality that is unwilling to accept that the City of Los Angeles, although it issued the Order to Comply, is now satisfied. The compliance was approved by the Department of Building & Safety; the governmental body authorized by law to issue notices of non-compliance, to decide when there is compliance and when there isn't compliance. And once again, the Court finds, based on credible testimony, that the issuance of the Order to Comply was the result of Mr. Chang's insistence, his attempt to get the City to cite the tenant and sub-tenant as part of a persistent scheme to find excuses to declare the Lease in default and remove the tenant and sub-tenant. Mr. Chang is upset not because Smart Capital is being harmed by the work done by the Debtor to bring the Premises into compliance with the Order to Comply, but because Mr. Chang's scheme/plan to remove the Debtor and WERM did not work.

Smart Capital has not come forward with credible evidence to establish the existence of a default under the Lease on the Motion to Assume Lease or a breach of the Lease under its Counterclaim.

Accordingly, the Court finds that there is no credible evidence to support a default under the Lease or Sublease by the Debtor or WERM related to the Order to Comply.

8. <u>Obstruction of Access</u>

Mr. Chang also advanced various allegations suggesting that the Debtor and WERM had obstructed access to portions of the building or improperly entered areas outside of the leased Premises. The Court finds that Mr. Chang failed to present any credible evidence supporting those allegations.

Specifically, the Court finds that there is no credible evidence that the Debtor or WERM obstructed Smart Capital's or Mr. Chang's access to any portion of the building to which Smart Capital was entitled access under the Lease, Sublease, or applicable law. To the contrary, the evidence demonstrated a pattern of Smart Capital seeking access to the Premises and other areas of the building and obtaining such access when the proper notice and information was provided as required by the Lease. (Trial Tr. June 8, 2026, at 92:24–93:2; Trial Tr. June 10, 2026, at 175:2–176:16); (Trial Exh. 1 § 10.2). Mr. Chang failed to identify any instance in which Smart Capital was denied access to an area to which it was legally entitled.

Again, Smart Capital has not come forward with credible evidence to establish the existence of either a default under the Lease on the Motion to Assume Lease or a breach of the Lease under its Counterclaim.

9. Trespass

The Court likewise finds that Mr. Chang failed to establish any actionable trespass by the Debtor, WERM, or their employees, agents, or representatives. Even assuming that individuals associated with Debtor or WERM occasionally entered portions of the building outside of the leased Premises, Mr. Chang failed to identify any provision of the Lease or Sublease prohibiting such conduct or establishing that such conduct would constitute a default under the governing agreements.

More importantly, Mr. Chang failed to come forward with any credible evidence that any such conduct occurred, that it was unauthorized, or that it resulted in any damage or interference with Smart Capital or Mr. Chang's rights. The Court finds that the arguments were vague, unsupported by documentary evidence, and based largely on speculation rather than firsthand knowledge or competent testimony.

Accordingly, the Court finds no default based on any alleged trespass. On the contrary, the Court finds that the evidence demonstrated that it was actually Mr. Chang trespassing in the Premises and violating the Debtor's and WERM's right to quiet enjoyment under Section 19 of the Lease. (Trial Exh. 1 § 19.) For example, the Court heard testimony from Mr. McAbian that people under Mr. Chang and Smart Capital's direction unilaterally entered into the Premises through a hole that they made by removing a fire hose cabinet (Trial Tr. June 8, 2026, at 144:12–145:11; Trial Tr. June 9, 2026, at 10:19–

11:11), and photographic evidence was introduced by the Debtor at trial establishing the intrusion into the Debtor's premises and a trespass by an agent of Smart Capital or Mr. Chang. Video footage was also introduced into evidence and reviewed by the Court which demonstrates Mr. Chang entering the Debtor's premises in the evening. (Trial Exh. 64, 65) Testimony was introduced that no prior written notice of such entry was provided by Smart Capital or Mr. Chang or anyone acting on their behalf as required under the Lease. Mr. Chang's testimony that he was present to repair the elevator was not credible and his testimony that he allegedly entered for emergency reasons because he allegedly heard something in the Debtor's premises was convoluted, inconsistent and not credible. The evidence presented does, however, establish that while Mr. Chang was trespassing onto the Debtor's leased premises, he physically assaulted a staff member employed by the Debtor or WERM at the Premises. (Trial Exhs. 64, 65.) Specifically, Mr. Chang shoved the employee to the ground in a callous and uncivil manner. (Trial Tr. June 11, 2026, at 178:19–178:22, 181:20–181:25.)

Smart Capital has not come forward with credible evidence to establish the existence of either a default under the Lease on the Motion to Assume Lease or a breach of the Lease under its Counterclaim.

10. <u>Building Conditions, Safety Issues, and Operations</u>

The Court finds that Smart Capital and Mr. Chang failed to establish any default relating to building conditions, safety concerns, operational issues, alleged unauthorized events, alleged misuse of the premises, or similar allegations. The Court finds that many of Mr. Chang's allegations were unsupported, exaggerated, speculative, inconsistent with governmental determinations, or based on Mr. Chang's subjective personal beliefs rather than admissible evidence. The Court finds Mr. McAbian's testimony on these issues credible and persuasive. (Trial Tr. June 10, 2026, at 171:8–175:1.) Accordingly, Smart Capital and Mr. Chang failed to present credible evidence to establish the existence of any default arising from such allegations.

Mr. Chang testified that he is driven almost entirely by a concern for "public safety." However, other aspects of his testimony and evidence presented contradict his contention in that regard. For example, Mr. McAbian credibly testified that Mr. Chang, through his employees, caused the leased Premises to be subject to trespassers and vandals by leaving unlocked and ajar certain doors and access points. (*See, e.g.,* Trial Tr. June 10, 2026, at 211:11–211:16.) Further, Mr. Chang complained about

and sought to preclude the Debtor from remedying building safety issues, including its replacement of the two-decade-old winches that suspend heavy overhead equipment, its installation and use of the truss and netting systems to prevent business invitees from overhead hazards, and its correction of the issues identified in the Order to Comply.

Smart Capital has not presented credible evidence to establish the existence of either a default under the Lease on the Motion to Assume Lease or a breach of the Lease under its Counterclaim.

11. Monetary Default

Mr. Chang raised a contention of certain monetary default for the first time at trial. Specifically, Mr. Chang asserted that if the Debtor's exercise of its option to renew the Lease was valid, the Debtor was paying Smart Capital an amount that did not properly account for the annual increases agreed to in the Lease. (Trial Tr. June 8, 2026, at 192:16–193:2; Trial Tr. June 9, 2026, at 7:8–7:14; Trial Tr. June 10, 2026, at 79:19–80:3, 85:19–85:24; *see* Trial Exh. 1 § 1.14.) No evidence was submitted by Smart Capital or Mr. Chang as to the amount being paid by the Debtor or the amount on deposit in the Debtor in Possession account as a result of Smart Capital's refusal to negotiate the rent checks. The evidence demonstrated that no notice of default, written or otherwise, was ever sent on this issue despite the language of the Lease that requires written notice (Trial Exh. 1 § 16.1). (Trial Tr. June 10, 2026, at 197:10–23; 133:5–8.) In addition, the Court heard credible evidence that the Debtor has always timely paid rent. (Trial Tr. June 8, 2026, at 79:18–79:19.) In fact, Mr. McAbian testified that a member of his team physically delivers a rent check to Smart Capital monthly. (Trial Tr. June 8, 2026, at 79:22–80:7.)

Once again, Smart Capital has not come forth with credible evidence to establish the existence of either a monetary default under the Lease on the Motion to Assume Lease or a breach of the Lease under its Counterclaim.

Accordingly, the Court finds that there is no credible evidence to support a monetary default under the Lease or Sublease by the Debtor or WERM.

12. Guaranty

At trial, Mr. Chang claimed a default based on the failure of the Debtor to provide a new guaranty following the death of Mr. William McAbian, Adi McAbian's father and one of two guarantors under the Lease, on March 15, 2025. (Trial Tr. June 8, 2026, at 77:3–77:22; *See* Trial Tr. June 11, 2026,

at 55:6–55:9.) There was no evidence or legal argument presented at trial that establishes that Mr. William McAbian's guaranty legally terminated upon his death or resulted in a default under the Lease. Neither Smart Capital nor Mr. Chang pointed to any provision of the Lease requiring a replacement guarantor in the event of his death. Neither Smart Capital nor Mr. Chang introduced the guaranty into evidence. Moreover, Smart Capital and Mr. Chang's argument that the Lease contains a self-executing forfeiture upon a guarantor's death—without notice, without an opportunity to cure, and without any declaration of default—contradicts both the plain language of the Lease and California's strong public policy against forfeitures of leasehold estates. *See* Lease §§ 7, 12.5, 22.8; Cal. Civ. Code § 1442 ("A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created."). Therefore, the Court does not need to address the effect of his death on the issue of adequate assurance of future performance.

Even assuming the Court was required to reach the issues of adequate assurance of future performance, there was no evidence presented by Smart Capital or Mr. Chang —no financial analysis, no expert testimony, no comparison of guarantor net worth—that Mr. William McAbian's or his estate's financial ability was impaired by his death upon which the Court can base a decision regarding the effect of his death on adequate assurance of future performance. Further, the evidence before the Court establishes that WERM remains a guarantor under the Lease. To the contrary, the Court finds that the Debtor has been current on rent, which WERM is paying. (Trial Tr. June 11, 2026, at 148:20–149:2.)

13. Notice

It is also worth noting that various portions of the Lease require notice from Smart Capital of any breach. (Trial Exh. 1 § 16.1; Trial Exh. 4 § 15.) The Court is not satisfied that it has heard any evidence that notice of *any* breach was given to the Debtor and WERM. Therefore, in addition to the reasons already set forth herein, the Court finds no default.

## V. CONCLUSIONS OF LAW

The Court's Findings of Fact are hereby expressly incorporated herein and used in support of the Court's following Conclusions of Law:

### A. The Lease Motions

Under 11 U.S.C. § 365(a), the Court has the authority to approve of the debtor in possession's

assumption of "any executory contract or unexpired lease of the debtor." *See* 11 U.S.C. § 1107(a). Here, the Court's decision rests on whether to assume the Lease and Sublease. If there is a default of either the Lease or Sublease, the law requires as a condition of assumption that the debtor in possession "cures, or provides adequate assurance that [it] will promptly cure, such default[.]" 11 U.S.C. § 365(b)(1)(A). Importantly, the Court does not need to reach section 365(b)(1) if there are no defaults. *See Smart Cap. Invs. I, LLC v. Hawkeye Ent., LLC (In re Hawkeye Ent., LLC)*, 49 F.4th 1232, 1236 (9th Cir. 2022) ("If there has been no default, section 365(b)(1)'s requirements—cure, compensation, and adequate assurances of future performance—are not triggered.").

1. Burden of Proof

The burden of proof with respect to assumption of an executory contract is a shifting one. As the moving party, the trustee or debtor in possession "has the ultimate burden of persuasion that the [agreement] is one subject to assumption and that all requirements for assumption have been met." *In re Rachels Indus., Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990). The moving party's initial burden includes establishing that assumption satisfies the business judgment rule. *See Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp. Inc.)*, 476 F.3d 665, 670 (9th Cir. 2007); *see also In re Minesen Co.*, 635 B.R. 533, 542 (Bankr. D. Haw. 2021); *In re Hertz*, 536 B.R. 434, 442 (Bankr. C.D. Cal. 2015).

However, "the nondebtor party to the contract has the burden of coming forward with all alleged defaults and demonstrating that any required notice of default has been properly given." *Minesen Co.*, 635 B.R. at 542 (citing *Kings Terrace Nursing Home & Health Related Facility v. N.Y. State Dep't of Soc. Servs. (In re Kings Terrace Nursing Home & Health Related Facility)*, Case No. 91–11478, Adv. No. 94–8912, 1995 WL 65531, at *26 (Bankr. S.D.N.Y. 1995)); *see also, e.g., In re Arriva Pharms., Inc.*, 456 B.R. 419, 424 (Bankr. N.D. Cal. 2011) (citing *In re Diamond Mfg. Co., Inc.*, 164 B.R. 189, 199 (Bankr. S.D. Ga. 1994)); *In re Hathaway*, 401 B.R. 477, 484 (Bankr. W.D. Wash. 2009) (citing *In re ALI Props., Inc.*, 334 B.R. 455, 460–61 (Bankr. D. Kan. 2005)); *Rachels Indus.*, 109 B.R. at 802.

2. No Default Exists Under the Lease or Sublease

In this case, the burden of coming forward with evidence of the existence of a default under the Lease or Sublease rests with Smart Capital. For the reasons set forth at length herein, Smart Capital and

Mr. Chang did not come forward with any evidence establishing the existence of any default under the Lease at trial, and Smart Capital likewise did not come forward with any evidence establishing the existence of any default by virtue of their opposition papers or any of the documents submitted by them in the record. The Court therefore expressly finds and concludes that no default whatsoever—monetary or non-monetary—exists under the Lease or Sublease, and that no such default existed as of the petition date or as of the date of assumption.

The Court further finds and concludes that Smart Capital and Mr. Chang failed to produce any credible evidence in support of any of the defaults claimed in the three Three-Day Notices served prior to the Petition Date and at issue in this case. Smart Capital and Mr. Chang also failed to establish the existence of a nuisance created or caused by the Debtor or WERM. Therefore, no cure, no compensation for pecuniary loss, and no further adequate assurance under 11 U.S.C. § 365(b)(1) is required as a condition of assumption; and no curative measures under 11 U.S.C. § 365(b)(1)(A), (B) and/or (C) is required by the Debtor. *See Hawkeye Ent., LLC*, 49 F.4th 1232 at 1236.

3. The Debtor's Assumption Satisfies the Business Judgment Rule

The Ninth Circuit Court of Appeals has instructed that application of the business judgment test is deferential; the bankruptcy court is to "presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *Agarwal*, 476 F.3d at 670.

The Court finds that the Debtor has exercised sound, reasonable, and appropriate business judgment in seeking to assume the Lease and Sublease. The evidence presented at trial establishes that the Lease is the Debtor's primary asset and forms the foundation of its reorganization efforts. (Trial Tr. June 10, 2026, at 216:10–18.) The Court further finds that the Bankruptcy Case was commenced in good faith and for a legitimate reorganization purpose and not as a litigation tactic or for any improper purpose.

The evidence also demonstrated that the Sublease with WERM and the continued operation of Exchange LA are the Debtor's primary source of revenue and the primary source of funding for the Debtor's plan of reorganization and payment of creditors, and that it depends upon the preservation of the Lease and the Sublease. Without the Lease and Sublease, the Debtor and WERM would be unable

to continue operating the business, generate revenue, or pursue a successful reorganization for the benefit of creditors and other stakeholders. (Trial Tr. June 10, 2026, at 216:10–18.) By contrast, assumption of the Lease and Sublease preserves a valuable estate asset, allows the Debtor to continue operating as a going concern, and maximizes the likelihood of a successful reorganization.

Accordingly, the Court finds that assumption of the Lease and Sublease represents a valid exercise of the Debtor's business judgment and is in the best interests of the estate, creditors, and all parties in interest. The Court further finds that Smart Capital and Mr. Chang failed to present any credible evidence demonstrating that assumption of the Lease and Sublease would be detrimental to the estate or otherwise constitute an improper exercise of the Debtor's business judgment.

Therefore, the Court concludes that, among other things, the Debtor has met its burden of proof and demonstrated to the satisfaction of the Court, that: (a) assumption of the Lease and Sublease for the Premises is in the best interest of the chapter 11 estate; (b) sound business judgment exists for the Debtor's decision to assume the Lease and Sublease; (c) the Debtor has acted prudently, on an informed basis, and in good faith and in an honest belief that assumption benefits the bankruptcy estate; (d) each and every requirement for assumption under Bankruptcy Code § 365(a) has been met by the Debtor; (e) no default or event of default exists as of the date of assumption; (f) no curative measures have been trigged under Bankruptcy Code § 365(b)(1) (A), (B) and/or (C); (g) no cure need be made to any counterparty to the Lease or Sublease as a condition of assumption of the Lease and Sublease; (h) no pecuniary loss has been established by Smart Capital as a result of any default and, in any event, no compensation for any pecuniary loss is required; and (i) adequate assurance of future performance is not required but nevertheless it has been adequately demonstrated by the Debtor, the evidence presented and the record in this case.

For the same reasons, the Court concludes that the Debtor is (and, at all times, has been) in compliance with § 365(d)(3) of the Bankruptcy Code with respect to the Lease.

**B. <u>The Complaint</u>**

On June 25, 2024, the Debtor initiated the Adversary Proceeding by filing the Complaint against Smart Capital and Mr. Chang individually (Adv. Dkt. 1). Therein, the Debtor asserted a claim for declaratory relief and injunctive relief.

The Court notes that Smart Capital did not appear through counsel to defend the claims asserted in the Complaint. While the Court could treat Smart Capital's failure to appear through counsel as an independent basis for relief, the Court need not do so. The Court conducted a full trial, heard testimony, admitted exhibits, considered the Parties' arguments, and made findings on the merits. Based on the evidence presented, the Court finds that the Debtor and WERM are the prevailing parties and have established their entitlement to relief against Smart Capital and Mr. Chang and that Smart Capital and Mr. Chang failed to establish any basis to deny such relief.

1. Declaratory Relief

In order for the Court to enter declaratory relief, the Court must be satisfied that the Debtor showed that "there is a substantial controversy between parties having adverse legal interests, and the controversy is of sufficient immediacy and reality to warrant declaratory relief." *Newport-Mesa Unified Sch. Dist. v. Cal. Dep't of Ed.*, 371 F.Supp.2d 1170, 1174 (C.D. Cal. 2005) (citing *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 (9th Cir. 1989)). The Court finds that declaratory relief is appropriate under the circumstances here. The evidence presented at trial established the existence of an actual, present, and continuing controversy between the Parties concerning their respective rights and obligations under the Lease, Sublease, and related agreements. Specifically, the Parties dispute, among other things, whether the Lease was properly extended, whether any defaults exist under the Lease or Sublease, the validity and effect of PA-4 and PA-5, and the Parties' respective rights concerning operation of the Premises. The Court further finds that resolution of those disputes will serve a useful purpose in clarifying and settling the legal relations at issue and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this litigation. Accordingly, declaratory relief is warranted.

The Court incorporates herein all findings of fact and conclusions of law previously made in connection with the 2023 Assumption Motion and finds that those findings apply equally to the claims for declaratory relief. Consistent with those findings, the Court declares that the automatic stay applies to the rights of the Debtor and WERM to operate under the CUB, the Lease and Sublease. In finding as such, the Court expressly concludes that (a) the Lease was properly extended through December 31, 2030; (b) the Lease, Sublease, and all amendments thereto remain valid, enforceable, and in full force

and effect; (c) the Debtor and WERM were not and are not in default under the Lease or Sublease; (d) PA-5 was properly issued and is valid and enforceable; and (e) Smart Capital and Mr. Chang's various theories of default relating to PA-4, PA-5, permitting issues, alleged unauthorized construction, alleged property damage, alleged interference with access, alleged trespass, and other matters addressed herein are without merit.

Accordingly, judgment shall be entered in favor of the Debtor on the claim for declaratory relief consistent with the findings and conclusions set forth herein.

2. Injunctive Relief

The Court further finds that the evidence supports the entry of limited injunctive relief in addition to the declaratory relief awarded herein.

> [A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156 (2010) (confirming application of the four-factor test outside the patent law context); *see also Edmo v. Corizon, Inc.,* 935 F.3d 757, 785 (9th Cir. 2019) (explaining that an injunction is "mandatory," as opposed to prohibitory, where it requires the defendant to act). Based on the transcripts from the trial and the Post-Trial Brief filed by the Debtor (Adv. Dkt. 142, 142-1), the Court concludes that the Debtor satisfied the four-factor test.

The Court has authority to enter permanent injunctive relief in this adversary under 11 U.S.C. §§ 1108, 1107, 541, 365, 363 and 105(a), Federal Rule of Bankruptcy Procedure 7065, and the traditional equitable standards governing permanent injunctions. Specifically, the Court concludes that it possesses broad equitable authority under 11 U.S.C. § 105(a) to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. The Court further concludes that the injunctive relief awarded herein is necessary and appropriate to carry out and enforce the provisions of the Bankruptcy Code, including, without limitation, the Debtor's rights under 11 U.S.C. §§ 365, 1108, 1107, 541, 363 and the relief granted in connection with the assumption of the

Lease and Sublease.

The Court finds that the Lease constitutes the Debtor's principal asset and that the continued operation of the Debtor's business depends upon the Debtor's ability to exercise its rights thereunder free from improper interference. As set forth herein, the Court has determined that the Lease and Sublease are valid and enforceable, that no defaults exist that would prevent assumption, and that Smart Capital and Mr. Chang have repeatedly interfered with the Debtor's rights under the Lease and Sublease. Absent injunctive relief, there exists a substantial risk that such interference will continue notwithstanding this Court's rulings.

The Court further concludes that monetary damages would be inadequate to protect the Debtor's possessory rights, operational rights, and rights arising from assumption of the Lease and Sublease. The injunctive relief awarded herein is narrowly tailored to protect those rights, prevent continuing interference, preserve the value of estate assets, and ensure the effectiveness of the relief granted by this Court.

Accordingly, the Court concludes that the injunctive relief awarded herein is authorized by 11 U.S.C. § 105(a), is supported by the Court's equitable powers, and is necessary and appropriate to implement and enforce this Court's rulings regarding the Lease, the Sublease, the Debtor's assumption thereof, and the administration of the bankruptcy estate. The Court further notes the provision of the Lease that expressly states that the Debtor "shall be entitled to all rights and remedies available at law or in equity (including specific performance or other injunctive relief)[.]" (Trial Exh. 1 § 17.1.)

(a) Quiet Enjoyment/Trespass

For the avoidance of doubt, the Court finds that the evidence presented at trial established a pattern of conduct by Mr. Chang involving unauthorized entry into areas subject to the Debtor's and WERM's possessory rights. To the extent the evidence established any actionable trespass, the Court finds that the more persuasive evidence demonstrated trespass by Smart Capital and Mr. Chang rather than by the Debtor or WERM. The Court specifically credits the video evidence admitted at trial, which depicts Mr. Chang entering the leasehold area and physically shoving a Debtor or WERM employee or representative to the ground. (Trial Exhs. 64, 65.) And, when asked if he apologized to the individual he shoved to the ground, Mr. Chang responded "No, why do I have to apologize?" (Trial Tr. June 9,

2026, at 55:4–5.) In addition, there was video evidence of Mr. Chang or Smart Capital's representatives knocking over camera equipment installed by the Debtor and otherwise entering the premises at a whim.

Under California law, every lease contains an implied covenant of quiet enjoyment, and a tenant may sue for breach of that covenant for damages as well as injunctive relief. *Andrews v. Mobile Aire Estates*, 22 Cal. Rptr. 3d 832, 840 (Cal. Ct. App. 2005). In other words, a tenant is entitled to exclude even the landlord from the leased premises except to the extent access is authorized by the lease or applicable law. *Id*. In *Andrews*, a tenant couple sued their mobile home park's owner for breach of contract after the owner failed to take any action against a neighboring tenant whose harassment and misconduct substantially interfered with their quiet enjoyment of their leasehold, despite repeated complaints. *Id.* at 835–37. The California Court of Appeal reversed summary judgment for the landlord, holding that the implied covenant of quiet enjoyment requires a landlord to make a reasonable response to such interference, including investigation, warning the offending party, seeking an injunction against the offending tenant, or pursuing eviction, rather than simply directing residents to resolve the matter themselves. *Id.* at 597.

Applied to this case, the holding in *Andrews* supports the proposition that Smart Capital and Mr. Chang have an obligation to cooperate with reasonable access requests, not merely refraining from physically blocking access. *See id*.; *see also In re Colbert*, No. 19-41729, 2022 WL 2181359, at *6 (Bankr. N.D. Cal. June 16, 2022) (applying *Andrews's* quiet-enjoyment standard to a tenant's claim that a landlord's eviction notices interfered with his tenancy).

The Court also expressly notes and considers the provisions of the Lease regarding quiet enjoyment (Trial Exh. 1 § 19) and preventing the landlord from "unreasonably interfere[ing] with the operation of the Tenant's business on the Premises" (Trial Exh. 1 § 2.2). The Court finds that the video evidence and corresponding testimony concerning that incident were credible and persuasive.

The Court further finds that Mr. Chang's conduct demonstrates a substantial likelihood of continued interference with the Debtor's and WERM's possessory rights absent injunctive relief. Monetary damages alone would be inadequate to remedy such continuing interference. Accordingly, the Court concludes that narrowly tailored injunctive relief is appropriate to protect the Debtor's and WERM's rights under the Lease and Sublease. The Court further finds that the injunctive relief granted

herein is in the public interest as it allows the Debtor and WERM to continue operating safely and effectively.

Moreover, based on the evidence presented at trial, including portions of the Lease relating to quiet enjoyment (Exh. 1 § 19) and the video evidence depicting Mr. Chang physically shoving a WERM employee or representative to the ground (Trial Exhs. 64, 65), the Court finds that injunctive relief is necessary to prevent further interference with the Debtor's and WERM's possessory rights and operation of the Premises. The Court further finds that monetary damages would be inadequate to protect against such future conduct. Accordingly, the Court concludes that it has authority pursuant to 11 U.S.C. § 105(a), and its inherent equitable powers to enter narrowly tailored injunctive relief prohibiting Mr. Chang, Smart Capital, and those acting in concert with them from engaging in conduct that interferes with the Debtor's and WERM's lawful possession, use, and enjoyment of the Premises, including physical interference with the Debtor's and WERM's employees, agents, contractors, and representatives.

(b) Mr. Chang's Execution of the PA-5 Master Covenant Agreement

The Court further finds that despite being integral to the operation of the Debtor and WERM, Smart Capital and Mr. Chang have improperly refused to execute the covenant documentation necessary to memorialize and record PA-5. (Trial Tr. June 9, 2026, at 39:11–40:14); (Trial Exh. 63). When asked whether he was "going to do everything [he] can to try to block PA-5 from being able to go into effect," Mr. Chang unequivocally responded, "Yes." (Trial Tr. June 9, 2026, at 40:11–14.) Indeed, the Lease requires the Debtor to obtain a CUB and Mr. Chang and Smart Capital seemingly concede that fact while simultaneously taking steps to prevent or revoke the CUB that the Debtor and/or WERM obtained.

The Court notes again, that Mr. Chang and Smart Capital's arguments directed at Mr. McAbian's signature of the PA-4 CUB are meritless, caused no cloud on title, and bear no relevance to Mr. Chang's intentional interference with PA-5. The Lease expressly notes that the premises are to be used for a "nightclub." (Trial Exh. 1 § 1.17.) The evidence showed that a nightclub cannot operate without certain use permits, in this case, the PA-5. (Trial Tr. June 10, 2026, at 216:13–18) ("if he continues to do what he does, he will jeopardize our ability to operate. If he doesn't sign the MCA for PA5 and eliminates PA5, we will not be able to operate, we will not be able to generate revenue, we will not be able to fund

the plan, which is why it's all relevant for this courtroom."). Moreover, the Lease makes the Debtor "solely responsible for . . . the procurement of a Conditional Use Permit ('CUP') from the appropriate governmental agencies for the use of the Premises as a nightclub and/or restaurant, and the procurement of the required ABS license ('ABC License') from the appropriate governmental agencies." (Trial Exh. 1 § 5.3.) Therefore, Smart Capital's refusal to sign PA-5 is in direct violation of the Lease which states, in pertinent part, "Landlord shall not unreasonably interfere with the operation of Tenant's business on the Premises[.]" (Trial Exh. 1 § 2.2.)

In addition to the requirements of the Lease, the Settlement Agreement contains a further assurances clause, which requires Smart Capital (as successor to New Vision) to "execute such other instruments consistent with, and necessary or convenient to carry out the provisions and purposes of this Agreement." (Trial Exh. 3 ¶ 16.) The Court finds PA-5 to fit within the requirements of the further assurances clause. As discussed herein, the Court has determined that PA-5 was validly issued and that Smart Capital's objections thereto are without merit. The Court therefore concludes that the Debtor and WERM are entitled to injunctive relief directing Smart Capital, Mr. Chang, or a person acting on their behalf to take all steps to comply with the terms of the Lease, including by executing all documents reasonably necessary to effectuate, record, and implement PA-5 within five days. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 781 (9th Cir. 2019).

(c) <u>HVAC and Fire/Life-Safety Access and Cooperation</u>

The Court further finds that the Debtor established the need for injunctive relief concerning access to the HVAC system and the building's fire-life-safety systems. The Lease expressly provides that the Debtor is responsible for "maintaining, replacing or upgrading the HVAC system for the Premises" (Trial Exh. 1 § 5.7; *see also* § 10.3) and the "fire protection and suppression system components within the Premises" (Trial Exh. 1 § 10.3), yet the evidence showed that Smart Capital has been actively and intentionally preventing the Debtor's access and, thereby, preventing the Debtor's compliance with the terms of the Lease. (Trial Tr. June 9, 2026, at 115:12–116:7; Trial Tr. June 10, 2026, at 1832:24–184:1.) Shockingly, while simultaneously preventing the Debtor from servicing the HVAC systems, Mr. Chang and Smart Capital claimed that the Debtor was in default of the lease for failing to service the HVAC system, again, lending to Mr. Chang and Smart Capital's persistent scheme

to harm the Debtor and WERM through any means necessary as this Court previously noted on the record following the trial. (Trial Tr. June 11, 2026, at 180:19–25.) The evidence demonstrated that access to those systems is necessary for operation of the Premises, maintenance of required safety measures, and compliance with applicable governmental requirements. (Trial Tr. June 11, 2026, at 182:1–13.) The Court finds that Smart Capital and Mr. Chang have, at various times, interfered with or failed to provide such access. (Trial Tr. June 11, 2026, at 182:6–12.) Accordingly, the Court concludes that the Debtor and WERM are entitled to reasonable and ongoing access to the HVAC system, fire-life-safety systems, and any related equipment necessary for testing, inspection, maintenance, repair, and regulatory compliance, regardless of whether such systems are located entirely within the leased Premises. (Trial Tr. June 11, 2026, at 182:15–20.)

The Court further finds that compliance with fire-life-safety requirements and Regulation 4 requirements is essential to the lawful operation of the Premises and the safety of patrons and employees. The Debtor responsible under the Lease for certain aspects of those requirements and the landlord is responsible for others as discussed herein (Trial Exh. 1 § 2.2, 5.7, 9.5, 10.3). The evidence established that Mr. Chang and Smart Capital's intentional delays and fabricated obstacles have impeded Hawkey's ability to service those elements and that Smart Capital has outright failed to comply with its obligations. (Trial Tr. June 11, 2026, at 154:24–155:7.) Accordingly, the Court concludes that Smart Capital, Mr. Chang, and all persons acting on their behalf shall provide the Debtor with access to the Premises fire-life-safety elements of the Premises including, without limitation, including all equipment, controls, monitoring systems, and components necessary for testing, inspection, certification, maintenance, repair, replacement, and regulatory compliance; and affirmatively provide Hawkeye and WERM, and their contractors, engineers, consultants, agents, and representatives, reasonable access to all fire-life-safety systems serving the Premises, including all equipment, controls, monitoring systems, and components necessary for testing, inspection, certification, maintenance, repair, replacement, and regulatory compliance.

Accordingly, judgment shall be entered in favor of the Debtor on the claims for injunctive relief consistent with the findings and conclusions set forth herein.

**C. <u>The Counterclaims</u>**

On July 22, 2024, Smart Capital asserted the Counterclaims against the Debtor and WERM (Adv. Dkt. 34). Therein, Smart Capital alleged the following claims: Count I for Breach of Contract; Count II for Breach of the Implied Covenant of Good Faith and Fair Dealing; Count III for Declaratory and Injunctive Relief; Count IV for Violation of 11 U.S.C. § 365(d)(3); Count V for Private Nuisance; Count VI for Waste; Count VII for Negligence; Count VIII for Ejectment.

The elements of a cause of action for breach of contract are (1) the existence of a contract, (2) the plaintiff's performance or excuse for non-performance, (3) the defendant's breach, and (4) resulting damage. *E.g., Bella Canvas LLC v. TSC Apparel, LLC*, 2020 WL 7048306, at *2 (C.D. Cal. Sept. 17, 2020). The elements for a cause of action for breach of the implied covenant of good faith and fair dealing are (1) a contract, (2) plaintiff fulfilled his or her obligations under the contract, (3) defendant unfairly interfered with plaintiff's right to receive benefits owed under the contract, and (4) plaintiff's harm. *E.g., Pemberton v. Nationstar Mortgage LLC*, 331 F. Supp. 3d 1018, 1041 (S.D. Cal. June 26, 2018). The Court has already addressed the elements for both declaratory and injunctive relief. *See Newport-Mesa Unified Sch. Dist. v. Cal. Dep't of Ed.*, 371 F. Supp. 2d at 1174; *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. at 391.

The elements for a cause of action for private nuisance are (1) interference with the use and enjoyment of a property, (2) invasion of plaintiff's interest in the use and enjoyment that is substantial and unreasonable. *Martinez v. Welk Group Inc.*, 907 F. Supp. 2d 1123, 1135 (S.D. Cal. 2012). To state a cause of action for waste, Smart Capital needed to prove an injury to its future ownership interest. *See Cal. Dep't of Toxic Substances Control v. Payless Cleaners*, 368 F. Supp. 2d 1069, 1082 (E.D. Cal. 2005). To state a cause of action for negligence, Smart Capital needed to prove (1) a legal duty to use due care, (2) a breach of that legal duty that (3) was the proximate cause of injury. *Lewis v. Russel*, 2018 WL 746463, at *3 (E.D. Cal. 2018). And, to state a cause of action for ejectment, Smart Capital needed to prove a right of ownership and a withholding of such right. *C&C Props. v. Shell Pipeline Co.*, 2018 WL 3014075, at *4 (E.D. Cal. 2018).

The Court concludes that Smart Capital failed to meet its burden of proof on any of the elements of its claims as set out above in the findings of fact. (Trial Tr. June 11, 2026, at 183:13–20.) Though

Smart Capital did not formally appear through counsel, Mr. Chang—Smart Capital's principal—did so appear and presented evidence and argument in support of each and every one of Smart Capital's claims and defenses. (Trial Tr. June 11, 2026, at 183:13–25.) Mr. Chang, a Defendant to the Complaint in his own right, raised issued and introduced evidence far outside the bounds of the claims against him, and focused almost exclusively on claims and evidence to support Smart Capital's claims and objections. (Trial Tr. June 11, 2026, at 162:21–163:7.) Once again, the evidence showed not only an absence of a default under the Lease or Sublease or misconduct on the part of the Debtor and WERM, but the presence of a scheme to harm the Debtor and WERM through claims and conduct motivated by malice and an absence of supporting law or fact. (*See* Trial Tr. June 11, 2026, at 172:7–13.) Smart Capital's theories of liability are predicated upon allegations that the Debtor and/or WERM defaulted under the Lease or otherwise engaged in misconduct. As noted above, Smart Capital failed to establish any actionable default under the Lease or Sublease. To the contrary, the evidence demonstrated that many of the alleged defaults were either barred by prior orders of this Court, unsupported by the evidence, expressly authorized by Smart Capital itself, or otherwise did not constitute defaults under the governing agreements. Accordingly, the factual predicate underlying Smart Capital's Counterclaims fails.

As an independent and alternative basis for the Court's ruling with respect to the Counterclaims, the Court notes that Smart Capital, as limited liability companies, could not appear and prosecute claims in this Court without licensed counsel. (Trial Tr. June 11, 2026, at 178:2–6.); *see* Local Bankr. R. 9011-2(a). No attorney appeared at trial on behalf of Smart Capital to prosecute the Counterclaim. While the Court permitted Mr. Chang to testify and present evidence, the Court does not find that such participation cured Smart Capital's failure to appear through counsel or otherwise relieved Smart Capital of its obligation to prosecute its claims through licensed counsel.

Accordingly, the Court finds in favor of the Debtor and WERM and against Smart Capital on each and every count of the Counterclaim. Judgment shall therefore be entered in favor of the Debtor and WERM on all Counterclaims.

**D. <u>Binding Effect of These Findings and Conclusions</u>**

Smart Capital and Mr. Chang were afforded a full and fair opportunity to litigate every issue determined herein over the course of a four-day trial in which Mr. Chang participated. (Trial Tr. June

11, 2026, at 124:10–16.) Having done so, Smart Capital and Mr. Chang are bound by the determinations set forth herein and may not relitigate them.

The Court concludes that the determinations set forth herein—including that the Lease, Sublease, and all amendments thereto were validly extended through December 31, 2030, and remain valid and enforceable (Trial Tr. June 11, 2026, at 177:15–177:20); that no default, monetary or non-monetary, exists under the Lease or Sublease (Trial Tr. June 11, 2026, at 163); that PA-4 and PA-5 are valid and that no fraud occurred in connection with the Master Covenant Agreement (Trial Tr. June 11, 2026, at 168:13–20); that the Debtor properly assumed the Lease and Sublease under 11 U.S.C. § 365 (Trial Tr. June 11, 2026, at 198:2–4); and that Smart Capital takes nothing on the Counterclaims (Trial Tr. June 11, 2026, at 183:13–15)—constitute final determinations on the merits that are binding on Smart Capital (all of the Smart Capital entities) and Mr. Chang. The Court concludes that each of the factual and legal issues determined herein was actually litigated, was necessarily decided, and was essential to the Court's judgment.

Because Mr. Chang appeared, testified, presented evidence, and made argument, and because he testified that he is the controlling member of Smart Capital, the Court concludes that Mr. Chang and Smart Capital are in privity with one another for purposes of both claim and issue preclusion. The preclusive effect of these Findings and Conclusions therefore extends fully to Mr. Chang individually, to each of the Smart Capital entities, and to any person or entity acting in concert with, or claiming by, through, or under them. The Court further concludes that, given Smart Capital's and Mr. Chang's demonstrated pattern of attempting to recast previously adjudicated matters as newly discovered grounds for relief, noting this for future courts considering the conclusive effect of this Court's Findings and Conclusions is necessary to bring finality to the Parties' disputes and to prevent further vexatious or duplicative litigation.

## VI. CONCLUSION

Based on the foregoing, the Court will enter separate orders and a judgment (i) granting the 2023 Assumption Motion, (ii) granting the Compliance Motion, (iii) granting declaratory and injunctive relief under the Complaint in favor of the Debtor and WERM, and (iv) entering judgment in favor of the Debtor and WERM on the Counterclaim.

###

Date: September 18, 2026

Martin R Barash
United States Bankruptcy Judge